**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

               **Plaintiff,**

v.                                                                             20-CR-150V

**ADRIENNE CZOSNYKA,**

               **Defendant.**

---

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

### PRELIMINARY STATEMENT

The defendant, Adrienne Czosnyka ("the defendant") is charged along with a co-defendant with having violated 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) and 856(a)(1) in a superseding indictment.  Dkt. #50.  She has filed an omnibus motion wherein she seeks suppression of the use of statements made by her to law enforcement officers as well as suppression of "all evidence from the stop [of the vehicle she was driving] that was collected by law enforcement."  As an alternative, she requests that "if necessary for such purpose, a hearing be held as to the suppression of

evidence obtained from the stop."   The defendant also has joined in the motion of the co-defendant, Daniel Rodriguez, seeking invalidation of the search warrant's general application which was issued by the Hon. Kenneth F. Case, Erie County Judge, on September 8, 2020.   Dkt. #66.   The government has filed its opposition to this omnibus motion.   Dkt. #69.

## FACTS[1]

On September 8, 2020, detectives of the Town of Tonawanda Police Department obtained a search warrant from the Hon. Kenneth Case, Erie County Court Judge, which authorized the search of the co-defendant's person, a Jeep Cherokee vehicle and the residence of the co-defendant located at 120 Center Street in the City of North Tonawanda.   Government Exhibit 1.   T. 8-9.   This search warrant was obtained as part of a homicide investigation being conducted by Detectives Campanella, Muscoreil and Scranton.   T. 7-8, 26.

On September 11, 2020, the search warrant was executed by the stopping of the Jeep Cherokee vehicle in which the co-defendant was a passenger and thereafter searching the vehicle and the person of the co-defendant.   T. 13-14, 29-30.   After the Jeep Cherokee vehicle was stopped, Detective Scranton approached the driver's side

---

[1] The facts are taken from the transcript of an evidentiary hearing held by this Court on July 7, 2022 in relation to the co-defendant's motions to suppress.   Dkt. #72.   References to that transcript are by "T" followed by the appropriate page number(s).

of the vehicle and spoke to the driver, who is the girlfriend of the co-defendant and advised her of the search warrant for the vehicle.   T. 14-15.   At this time, Detective Muscoreil removed the co-defendant from the passenger side of the vehicle and he and Detective Campanella took the co-defendant back to the area of their detective's vehicle.   T. 16, 32, 43.   Detective Muscoreil had placed the co-defendant in handcuffs. T. 60, 74-75.   Detective Campanella gave *Miranda* warnings and an advice of rights to the co-defendant.   The co-defendant acknowledged that he understood his rights, and after being asked by Detective Campanella if he would speak to them about the homicide they were investigating, the co-defendant agreed to speak to them about it. T. 41-42, 49, 61-62, 75-76.   Detective Campanella then asked a number of questions of the co-defendant about the homicide and shortly thereafter, the co-defendant stated that he didn't want to talk about it anymore.   Thereupon, Detective Campanella walked away from the co-defendant and returned to the Jeep Cherokee vehicle.   T. 42, 46-47, 48, 62-63, 76.

      The defendant, the driver of the Jeep Cherokee, told Detective Scranton that anything found in the vehicle was the co-defendant's and indicated to him that there were drugs in the back of the vehicle.   T. 17.   Detectives Scranton and Campanella went to the rear of the vehicle and opened the rear hatch and began a search of the vehicle.   This was observed by Detective Muscoreil and the co-defendant since they were standing facing the Jeep Cherokee , and at that time, the co-defendant told Muscoreil that "everything that [they] were going to find in the vehicle was his."   T. 64-

3

65. Detective Muscoreil asked the co-defendant "if it was guns or drugs" and the defendant "said it was drugs." T. 65. Nothing more was said at this time by the co-defendant or Detective Muscoreil and he was placed in a North Tonawanda police patrol car. T. 18, 47, 65. The search of the Jeep Cherokee resulted in the finding and seizure of a quantity of narcotics in the back of the vehicle. T. 17.

When Detective Scranton began walking back to his detective vehicle, a North Tonawanda police officer advised him that the co-defendant wished to speak to him. The co-defendant was sitting in the back seat of a police patrol car and the window was lowered. Detective Scranton approached the patrol car and the co-defendant asked him if they were going to search his residence to which Scranton replied "yes" and that they had a search warrant authorizing the search of the co-defendant's residence. T. 18-19, 48-49. Thereupon, the co-defendant stated to Scranton that anything they were going to find at the residence was his. When asked if there were drugs, the co-defendant said yes and told Detective Scranton "that in a jacket of his was another quantity of drugs." T. 18-19. A subsequent search of the co-defendant's residence pursuant to the search warrant authorizing the same resulted in the finding and seizure of additional quantities of drugs, including some found in the co-defendant's jacket as he had indicated. T. 19.

## DISCUSSION AND ANALYSIS

### A. The Stop of the Defendant's Vehicle

> The right of the people to be secure in their persons, houses, papers, and affects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized.

The search warrant issued by Judge Case authorized the search of the Jeep Cherokee vehicle that the defendant was driving on September 11, 2020 as well as the search of the co-defendant Rodriguez who was a passenger in the vehicle. T. 8-9; Government Exhibit 1. This search warrant was based on a judicial finding of probable cause by Judge Case, and as a result, it was reasonable for the police to stop the Jeep Cherokee vehicle on September 11, 2020 for purposes of executing the search warrant and searching the vehicle. Thus, the actions of the police were reasonable and in compliance with the requirements of the Fourth Amendment. As a result, the defendant's claim of a Fourth Amendment violation of her rights is without legal merit and is rejected. In order to effectuate the execution of the search warrant authorizing the search of the vehicle, it was necessary to first stop the vehicle.

### B. The Statements of the Defendant

The defendant claims that on September 11, 2020, "in the course of her stop, [she] was removed from her vehicle," "was not free to leave, was questioned by a large number of police officers and was not given *Miranda* warnings." As a result, she asserts that "all statements collected from [her] without a *Miranda* warning must be suppressed from potential use at trial, and if necessary, a hearing should be held to determine the extent of what may be admissible." Dkt. #66, pp. 10-11.

The defendant fails to specify what statements, if any, that she made to the police that should be suppressed as evidence at her trial. Furthermore, the defendant has failed to submit an affidavit setting forth appropriate facts to support her claim of suppression and/or an evidentiary hearing on the issue.

In order to warrant a suppression hearing, the defendant must demonstrate a specific factual dispute that can be resolved by a hearing. *See United States v. Mathurin,* 148 F.3d 68 (2d Cir. 1998) (evidentiary hearing required where defendant averred that he was never given *Miranda* warnings); *United States v. Richardson*, 837 F. Supp. 570 (S.D.N.Y. 1993) (evidentiary hearing not required where defendant failed to make specific factual allegations of illegality based upon personal

6

knowledge but defense counsel merely alleged that defendant did not knowingly waive his rights before answering questions); *United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) (affidavit of defense counsel seeking suppression of custodial statements for failure to provide *Miranda* warnings insufficient to warrant evidentiary hearing or suppression); *United States v. Caruso*, 684 F. Supp. 84, 87 (S.D.N.Y. 1988) ("without a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be presented by the moving papers."). Indeed, the defendant's papers must raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion in order to require a hearing. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). As defendant has failed to raise a factual basis for her motion to suppress statements, it is recommended that this aspect of his motion be denied.

### C. Defendant's Joinder in Co-Defendant's Motion Against the Search Warrant

The defendant moves to join in the co-defendant's motion seeking "invalidation of the search warrant's general application" based on "grounds that there was a lack of criminal nexus between the criminal activity that formed the basis for the warrant and the properties provided (sic) to be searched." Dkt. #66, p. 9. The defendant also moves "for suppression of all evidence obtained as the result of the warrant in all places." Dkt. #66, p. 9.

The defendant has not provided an affidavit in support of her motion that establishes a reasonable expectation of privacy "in all places" for which she would have Fourth Amendment rights.

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993).

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.

*Id., quoting Alderman v. United States*, 394 U.S. 165, 171-72 (1969). In other words,

> Fourth Amendment rights are personal rights which . . . may not be vicariously asserted. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal quotation, citations & footnote omitted).

Lastly, this Court's Report, Recommendation and Order in the case of the co-defendant is hereby deemed to be the finding and recommendation of this Court in response to the defendant's motion to join in the co-defendant's motion seeking invalidation of the search warrant of September 8, 2020.   See Dkt. #80.

## **CONCLUSION**

Based on the foregoing, it is hereby recommended that the defendant's motion seeking suppression of the use of evidence seized pursuant to the search warrant of September 8, 2020 and any statements made by her to law enforcement officers on September 11, 2020 be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:   Buffalo, New York
         December 19, 2022

                                        *S/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**